# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMAR ALSTON,<br>    Plaintiff,<br><br>    v.<br><br>SECRETARY GEORGE LITTLE, *et al.*<br>    Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO. 24-CV-1574<br>:<br>:<br>: |

## MEMORANDUM

**BAYLSON, J.**                                                                                              **JUNE    20, 2024**

*Pro se* Plaintiff Lamar Alston, a prisoner currently incarcerated at SCI Phoenix, filed this civil rights action pursuant to 42 U.S.C. § 1983. Alston seeks leave to proceed i*n forma pauperis*. For the following reasons, the Court will grant Alston leave to proceed *in forma pauperis*, dismiss some of his claims with prejudice and some without prejudice, and allow him to file an amended complaint.

**I.     FACTUAL ALLEGATIONS**[1]

Alston brings this case against Secretary George Little of the Pennsylvania Department of Corrections ("DOC") and individuals alleged to be employed at SCI Phoenix: Superintendent Sorber, Superintendent Terra, Deputy Superintendent Hensley, Unit Manager Luquis, Psychological Services Specialist Stickney, Lieutenant McCaffrey, two John Doe Nurses, and four John Doe Corrections Officers. Alston was transferred to SCI Phoenix from another DOC facility on September 30, 2021. (Compl. at 7; ECF No. 1-1 at 16.) On October 13, 2021, he

---

[1] The following factual allegations are taken from the Complaint, documents attached thereto, and publicly available records of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

signed up for an institutional rehabilitation program known as the Intensive Management Unit ("IMU").[2] (Compl. at 7.) On December 7, 2021, he was placed in Phase 5 of the six classification levels in the IMU. (*See* ECF No. 1-1 at 9.)

Alston states that on March 16, 2022, he had a dispute at a meeting with the Program Review Committee at SCI Phoenix regarding his participation in and progress through the IMU. (Compl. at 7.) He alleges that Defendants Luquis and Stickney "and other Defendants" altered his institutional records such that his progress in the IMU was delayed.[3] (*Id.*) Before he left the meeting, he told officials that he intended to engage in a hunger strike to protest their decisions.[4] (*Id.*) Alston states that the situation made him depressed and suicidal, so on March 18, 2022, he

---

[2] Although Alston does not describe the IMU in detail, he appended exhibits to his Complaint related to his participation in the program. (*See* ECF No. 1-1 at 7-9, 16.) These exhibits indicate that the IMU is a special housing unit with a "six phase program" aimed at transitioning inmates from the DOC's Restricted Release List ("RRL") "back into general population housing." *See Batchelor v. Little*, No. 22-1340, 2022 WL 16749039, at *2 (E.D. Pa. Nov. 7, 2022).

[3] Alston claims that the Defendants' actions deprived him of "time credits" for the time he had participated in the IMU because they falsely listed him as refusing to participate. (Compl. at 7.) The records attached to his Complaint indicate that Alston was placed on the RRL by the DOC's Central Office on June 6, 2021, prior to his transfer to SCI Phoenix. (ECF No. 1-1 at 16.) Alston's exhibits also include a program enrollment form that he completed on October 13, 2021, which noted that he was "unable to participate" in the IMU at the time because there was "no program yet" and no one had explained the situation to him. (*Id.* at 8.) Then, on December 7, 2021, he was given a placement in Phase 5, although records indicate that the full IMU policy had yet to be released at the time. (*Id.* at 9.) The records also indicate that the March 16, 2022 meeting followed an assessment period and that the Program Review Committee was set to confirm Alston's placement in Phase 5 of the IMU, but handwritten notes show that Alston was instead placed in Phase 6 of the IMU because he "indicated that he was going on a hunger strike and would not participate in the program." (*Id.* at 16.)

[4] Alston notes that he has engaged in "numerous" hunger strikes at other Pennsylvania prisons in the past, including one for which the Centre County Court of Common Pleas issued a "preliminary injunction to force feed [him] and render medical treatment against [his] will, which include[d] tak[ing his] vital signs." *See* Compl. at 7-8; *see also Commonwealth v. Alston*, 274 A.3d 781, 2022 WL 453566, at *4 (Pa. Commw. Ct. 2022) (unpublished table decision) (vacating injunction and remanding for new hearing).

"swallowed fifty pills" and was moved to the medical ward for psychiatric observation. (*Id.*) He asserts that he asked to return to his housing placement in the IMU but was instead kept under hunger strike protocol in the medical unit against his will. (*Id.* at 7.)

Alston claims that he was held for weeks in the medical unit without his consent, and during that time he engaged in a hunger strike by refusing at least eight consecutive meals, then eating some meals before refusing them again. (*Id.* at 8.) He states that he refused all medical treatment and would not end his hunger strike because he was still able to move around his cell and participate in daily activities, and that he was not in danger from refusing to eat. (*Id.* at 9.)

Alston alleges that on April 8, 2022, because of his refusal to end his hunger strike or accept medical treatment, the Defendants attacked him with pepper spray and tasers, then put him in a restraint chair secured by handcuffs, "while all Defendants Lt. McCafferty, two John Doe Nurses and four John Doe Officers," held him down to take his vital signs and administer medical treatment against his will. (*Id.* at 9.) He claims that the Defendants planned their use of force and told him beforehand that forced treatment of prisoners on hunger strike was a practice and policy "of SCI Phoenix and not any other PA DOC prison" that "all Defendants knew of and created." (*Id.* at 8-10.)

Alston alleges that as a result of the April 8 incident, he suffered a range of physical and psychological injuries. (*Id.* at 10.) He also claims that the "same Defendants, medical nurse-John Does who participated in the attack with other Defendants," deducted $795 from his institutional account for the medical treatment that they administered. (*Id.*) Based on his injuries and the charges to his institutional account, he alleges federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as state-law claims of assault and battery. (*Id.* at 12-15.) He seeks $300,000 in compensatory damages and $300,000 in punitive damages, as well as injunction

3

ordering the Defendants to cease their alleged policy of forcing medical treatment and special housing on inmates who are engaged in a hunger strike.

## II.     STANDARD OF REVIEW

The Court grants Alston leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Alston is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[5] However, as Alston is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## III. DISCUSSION

Alston brings constitutional claims pursuant to § 1983 as well as state-law claims. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Regarding the IMU

To the extent that Alston intended to raise a claim related to the timing of his enrollment in the IMU or any progress through the various phases of that program toward his eventual placement in a lower-security housing assignment, he has failed to state a claim to relief.[6] Specifically, Alston appears to lodge claims against Defendants Luquis and Stickney for purportedly falsifying documents to delay his enrollment in or progress through the IMU. However, it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, security classification, housing assignment, or rehabilitation program. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same); *see also Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) ("Prisoners have no constitutional right to rehabilitation, education, or jobs") (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *Knight v. State of Ariz.*, 39 F.3d 1187 (9th Cir. 1994) ("Inmates have no constitutional right to education or rehabilitation."). Accordingly, any claims related to Alston's

---

[6] Alston's discussion of the dispute over his progress in the IMU may have been intended to contextualize his decision to engage in a hunger strike as a "peaceful protest" and to support his allegation of retaliation, discussed below. (Compl. at 7.) The Court will nonetheless construe the Complaint liberally and address the allegations to determine whether they support a separate plausible claim.

housing placement or progress in the IMU will be dismissed with prejudice.

### B. Claims Regarding the Incident on April 8, 2022

The Court understands Alston to allege claims of excessive force, cruel and unusual punishment, retaliation for protected expression, and assault and battery related to the incident on April 8, 2022. He alleges that the Defendants present at the time were Lieutenant McCafferty, the four John Doe Officers, and the two John Doe Nurses. However, in pleading these claims, Alston continually refers collectively to "Defendants," rather than specifying what each particular named Defendant, identified by name or not, did or did not do that violated his rights. (*See generally* Compl. 9-10.) Pleading in such a manner is insufficient to put the Defendants on notice of the conduct with which they are charged and does not state a plausible claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Furthermore, Alston's conclusory assertion that groups of Defendants are liable to him or generally violated his rights is insufficient to state a claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

Because of these deficiencies, the Court cannot determine at this time whether Alston could state a plausible claim to relief on his constitutional claims related to the use of force,

retaliation, or the rendering of involuntary medical treatment during the April 8 incident.[7] *See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (explaining that courts evaluate excessive force claims by looking to factors that include "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation marks omitted)); *see also Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) ("To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." (cleaned up)); *White v. Napoleon*, 897 F.2d 103, 113-14 (3d Cir. 1990) (explaining that prisoners "retain a limited right to refuse treatment," which must be balanced against valid state interests, and that retaliation against a prisoner for exercising that right is actionable); *Aruanno v. Glazman*, 316 F. App'x 194, 195 (3d Cir. 2009) (explaining that "the decision of a medical professional to force medicate a prisoner is presumed valid, 'unless it is shown to be such a substantial departure from accepted professional judgment, practice or

---

[7] Alston also raises state-law claims for assault and battery related to this incident. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person). The allegations supporting these state law claims are the same as those supporting Alston's excessive force claim; therefore, the Court declines to dismiss these claims at this stage of the litigation. *See Short v. Webb*, No. 18-4130, 2019 WL 4573254, at *5 (E.D. Pa. Sept. 20, 2019) (declining to dismiss state law claims of assault and battery where the claims were based on the same allegations that supported the excessive force claim which was permitted to proceed).

standards as to demonstrate that the person responsible actually did not base the decision on such judgment,'" or the defendants "possessed a subjective appreciation of an excessive risk to [to the prisoner's] safety, and nevertheless chose to disregard that risk" (first quoting *White*, 897 F.2d at 113, then citing *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994))).  Accordingly, the Court will dismiss these claims without prejudice and grant Alston leave to file an amended complaint if he is able to allege additional facts to cure the defects the Court has identified.

### C. Due Process Claim for Money Deducted from Institutional Account

Alston also presents a due process claim for the deduction of money from his institutional account to pay for the medical treatment related to his hunger strike.  To state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law." *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

"Inmates have a property interest in funds held in prison accounts . . . [and] are entitled to due process with respect to any deprivation of this money." *Reynolds v. Wagner,* 128 F.3d 166, 179 (3d Cir. 1997).  However, the United States Court of Appeals for the Third Circuit has explained that a prisoner in Pennsylvania cannot state a plausible federal constitutional claim based on the loss of his property where there are available and meaningful postdeprivation remedies for the loss.  *See Spencer v. Bush*, 543 F. App' x 209, 213 (3d Cir. 2013) ("[A]n

8

unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." (quoting *Hudson v. Palmer*, 468 U.S. 517, 533(1984))). Because both the Pennsylvania Tort Claims Act and the prison grievance process provide adequate and available remedies for a willful deprivation of property, Alston's due process claim is not plausible. *See Shakur v. Coelho*, 421 F. App' x 132, 135 (3d Cir. 2011) (*per curiam*). Accordingly, Alston's due process claim regarding deductions from his institutional account for medical treatment will be dismissed with prejudice.

### D. Supervisory Liability Claims

Alston does not allege that Defendants Little, Sorber, Terra, Henlsey, Luquis, or Stickney were personally involved in the April 8 incident. Alston merely asserts that these Defendants were to varying degrees "in charge of" others and "receive[d] reports weekly about the operations of the prison and . . . wrongdoings of staff" at SCI Phoenix, or that he "contacted" them about his dispute over the IMU in the form of letters, request slips, grievances, and complaints. (*See* Compl. at 2-4, 7.) In a § 1983 action, however, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Moreover, a prison official's participation in the grievance process or failure to take action in response to a prisoner's letter about the conditions in which he is confined is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"); *see also Dooley*, 957 F.3d at 374 (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances).

To the extent Alston seeks to assert claims based on a supervisory liability theory against any of these Defendants, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm."[8]  *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id*.

Alston alleges that: "All Defendants knew of and created the unwritten unconstitutional practice of using excessive force upon inmates who [are] hungerstriking and if the inmate refuse[s] medical treat and refus[es] to allow DOC defendants to take vital signs without a court order the inmates will be subjected to O.C. pepper spray, restraint chair handcuffs, shackles and tazed."  (Compl. at 8.)  First, as discussed above, his reference to all Defendants collectively does not provide adequate notice to the named Defendants about the conduct that they are alleged to have engaged in or plead with particularity which Defendants are responsible for the specific policy, practice, or custom.  *See Lawal*, 546 F. App'x at 113; *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("[Plaintiff's] conclusory statements that defendants Delbalso, Mason, and White 'created a policy or custom under which unconstitutional practices occurred' are insufficient to allege personal involvement.").

---

[8]  To the extent that Alston attempts to allege that the DOC has an official policy establishing the protocol for dealing with inmate hunger strikes, and that the supervisory Defendants failed to train others according to the DOC's policy by substituting another policy, he has failed to plead the elements of such a claim.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (explaining that to plead a claim for failure to properly supervise, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice" (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Second, beyond the nonspecific and conclusory allegation that "they stated that it was a practice p[ol]icy of SCI-Phoenix and not any other PA DOC prison" (Compl. at 10), Alston has not pled any facts to suggest that there was a policy, practice, or custom that was consistently applied at SCI Phoenix. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (describing a custom as an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (explaining that a policy allegation based solely on a single incident is not plausible; a plaintiff must instead allege that a defendant had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that failure was affirmatively linked to the plaintiff's injury); *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) ("A plaintiff can only allege the existence of a policy or custom by pointing to multiple incidents or multiple reports of prior misconduct by a particular employee." (cleaned up)).

Because Alston does not explicitly allege how Defendants Little, Sorber, Terra, Henlsey, Luquis, or Stickney were each involved in the alleged deprivation of his rights related to the April 8 incident, and because he does not adequately plead the existence of a policy or practice that caused his alleged injuries, the claims against these Defendants will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, Alston may pursue these claims in an amended complaint that addresses these deficiencies.

### III.   CONCLUSION

For these reasons, the Court will grant Alston leave to proceed *in forma pauperis* and dismiss with prejudice his claims regarding his enrollment and participation in the IMU and the deduction of funds from his institutional account.  The Court will dismiss Alston's remaining claims without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

grant Alston an opportunity to file an amended complaint in the event he can cure the deficiencies in his claims.[9]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  An appropriate Order, which provides further instruction about amendment, will be entered separately.  *See* Fed. R. Civ. P. 58(a).

                                         **BY THE COURT:**

                                         s/ Michael M. Baylson

                                         **MICHAEL M. BAYLSON, J.**

---

[9] Alston has filed numerous motions.  His Motion for Status (ECF No. 10) and Motion to Stay Case (ECF No. 11) are denied as moot.  The Court construes his Motion to Produce Documents (ECF No. 13) as a request for a copy of his Complaint and will grant the Motion to that extent.  Finally, his Motion for the Appointment of Counsel (ECF No. 12) is denied without prejudice to renewal after the Court conducts a statutory screening of any amended complaint Alston may file.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).